NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARITZA I. RUIZ, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-5386 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**BROWN, Chief Judge**

  This matter comes before the Court upon the appeal of plaintiff Maritza Ruiz ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I. BACKGROUND**

  On April 23, 2002, Plaintiff filed an application for disability insurance benefits and supplemental security income under Title II and Part A of Title XVIII of the Act. Record ("R.") at 70-73. Plaintiff based her application on headaches, back pain, right knee pain, arthritis in the back and knees, depression, memory loss, and loss of concentration. R. at 70. Plaintiff alleged that these ailments commenced on March 29, 2002. Id. On or about November 8, 2002, the

Social Security Administration denied Plaintiff's claim. R. at 52-56. A request for reconsideration of this decision was denied on February 12, 2003. R. at 58-60. On or about March 7, 2003, Plaintiff filed a Request for Hearing by Administrative Law Judge. R. at 61. On November 25, 2003, Administrative Law Judge ("ALJ") Dean Determan conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits. See R. at 22-48.

Plaintiff was the sole witness at the hearing. Her attorney first noted that she began working four hours a day at McDonald's the previous September. R. at 25-27. During questioning by the ALJ, Plaintiff testified that she had work experience as a nursing assistant and has held clerical, secretarial, receptionist, dispatcher, and supervisory positions. R. at 28-29. Plaintiff testified that she now works at the McDonald's drive through window and must stand during her shift. R. at 29-30. Plaintiff testified that she drives herself. R. at 31. Plaintiff then testified that she tries not to drive herself if she can avoid it and that her husband usually drives her to work. R. at 36. Plaintiff testified that her weight at that time was 260 pounds, which was above her normal weight. R. at 32. Plaintiff testified that she has carpal tunnel syndrome in her left wrist. Id. The ALJ questioned Plaintiff regarding her past jobs, wherein Plaintiff testified that as a nursing assistant she was required to stand most of the time, but her clerical, secretarial, and receptionist positions mostly involved sitting. R. at 32-33.

Plaintiff further testified that she had arthroscopic surgery on her right knee in October of 2000. R. at 30-31. Plaintiff testified that she has pain in her left knee and after standing for her shift she soaks herself and cries. R. at 31. Plaintiff testified that both of her legs will go numb while she is standing at work during her four-hour shift. R. at 36. Plaintiff testified that she saw two different psychiatrists for her depression, but was no longer seeing either of them. R. at 33.

Plaintiff testified that she had been taking Prozac for her depression and anxiety attacks.  Id.

When questioned by her attorney, Plaintiff testified that she gets headaches every week that last for a day or two.  R. at 37.  Plaintiff attributed the headaches to stress.  Id.  Plaintiff testified that she can sit for about a half-hour before she has to stand up because her legs begin to feel uncomfortable and numb.  R. at 40.  Plaintiff testified that the carpal tunnel syndrome in her left wrist causes her to drop items at work.  R. at 42-43.

Plaintiff testified that her memory is not very good.  R. at 43.  Plaintiff further testified that she bathes, dresses, and feeds herself.  Id.  Plaintiff testified that she can do housework, but activities such as mopping and sweeping hurt her back.  R. at 43-44.  Plaintiff testified that she does not go grocery shopping alone because she cannot carry the basket.  R. at 44.  Plaintiff testified that she has trouble walking and going down stairs because her knees could give out.  R. at 45-46.  Plaintiff testified that she is unable to sleep and tosses and turns most of the night.  R. at 47.  Finally, Plaintiff testified that she does not eat much because she has been gaining weight and most of the time food does not appeal to her.  R. at 47.

The ALJ issued a decision on January 2, 2004, in which he determined that Plaintiff is not disabled within the meaning of the Act.  R. at 13-21.  The ALJ concluded that Plaintiff could return to her past relevant work in clerical, secretary, receptionist, and dispatcher positions.  R. at 20.  The ALJ's opinion summarized all of the evidence in the record, which included Plaintiff's various medical examinations.  See R. at 18-19.  The examinations included several x-rays in 2000 and MRI's that revealed a disc herniation in her back and a meniscus tear in her left knee.  R. at 18.  An examination by Dr. Bieri in 2001 found Plaintiff's general physical and mental status to be unremarkable, except for obesity.  R. at 18.  Dr. Caputo found Plaintiff's vision to be

3

20/20 in 2002 and her complaint of headaches was not explained by ocular findings.  Id.

A 2002 mental status examination at Columbus Hospital indicated no history of psychiatric treatment and noted that her anxiety began when she was diagnosed with thyroid issues.  Id.  An entry dated April 2, 2002, stated that Plaintiff was taking karate lessons.  Id.  Notes dated May 31, 2002, stated that Plaintiff's depression and anxiety diminished with Prozac.  Id.  The entry on July 2, 2002, indicated an x-ray of both hands was normal.  Id.

Dr. Buglisi observed Plaintiff on August 27, 2002, and found her to have a normal gait and able to walk on her heels and toes.  Id.  Dr. Buglisi opined that Plaitniff's hypothyroidism, anxiety, and headaches appeared to be controlled and that there was no evidence of carpal tunnel syndrome.  Id.  Dr. Friedman examined Plaintiff on August 29, 2002, and also noted that she recently took a martial arts class.  R. at 18-19.  Dr. Friedman recommended outpatient psychotherapy and supervision for her antidepressant medication.  R. at 336.  Dr. Friedman believed her condition could last at least one year.  Id.

Based on that information, the ALJ found that Plaintiff's alleged disabling conditions and their effect on her ability to work were not entirely credible.  R. at 19.  The ALJ thus found that Plaintiff retained the residual functional capacity for a narrow range of light work.  Id.  Accordingly, the ALJ found her able to lift as much as 20 pounds occasionally and 10 pounds frequently, sit for 6 hours and stand and/or walk for 4 hours in a 8-hour workday.  Id.

The ALJ noted the Social Security Administration's sequential evaluation process followed to determine disability.  See R. at 17-28; 20 C.F.R. § 404.1520.  After reviewing the entire record, the ALJ made the following findings: 1) Plaintiff met the nondisability requirements for a period of disability and is insured for benefits through the date of the ALJ's

decision; 2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; 3) Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the regulations; 4) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations; 5) Plaintiff's allegations regarding her limitations are not totally credible; 6) all of the medical opinions in the record regarding the severity of Plaintiff's impairments were considered; 7) Plaintiff has the residual functional capacity for a narrow range of light work; 8) Plaintiff's past relevant work in clerical, secretary, receptionist, and dispatcher positions did not require the performance of work-related activities precluded by her residual functional capacity; 9) Plaintiff's medically determinable degenerative joint disease of the knees, herniated disc, and obesity do not prevent her from performing her past relevant work; and 10) Plaintiff was not under a disability as defined in the Act at any time through the date of the ALJ's decision.  R. at 20-21.

On or about September 15, 2004, Plaintiff requested that the Appeals Council review the ALJ's decision.  R. at 8-10.  The Appeals Council denied the request on September 28, 2004.  R. at 4-6.  Plaintiff then filed the instant civil action with this Court, seeking review of the Social Security Administration's denial of Social Security Disability and Supplemental Security Income benefits for lack of disability.

## II. DISCUSSION

### A. Standard Of Review For Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405(g); Knepp v.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(internal citation omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

     B.  Standard For Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. Id. If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. Id. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past

("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other type of work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work."  Id.  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Id.  The step five analysis "can be quite fact specific."

Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

      C.  <u>The ALJ's Decision Was Based Upon Substantial Evidence In The Record</u>

      Plaintiff contests the ALJ's determination that she retained the residual functional capacity to perform her past relevant work. Pl.'s Br. at 10-14. Plaintiff asserts that the ALJ failed to cite specific medical facts regarding Plaintiff's ability to perform work activities in an ordinary work setting and failed to make findings regarding the mental demands of Plaintiff's past relevant work. However, the ALJ's decision indicates that Plaintiff's subjective complaints were considered in addition to the objective medical evidence in reaching the ultimate conclusion regarding her ability to return to her past relevant work.

      Plaintiff asserts that objective documentation evidences her complete inability to bend or stoop, yet Plaintiff also notes Dr. Buglisi's observation that Plaintiff "had problems squatting" and states the definition of squatting as "bending the body downward and forward, by bending the spine at the waist." Pl.'s Br. at 12. Furthermore, Dr. Golish's assessment references an "occasional[]" limitation in stooping, kneeling, and crouching. R. at 342. Those contrasting statements are a sampling of the conflicting evidence in the record that the ALJ had to weigh in reaching the final decision. Although the Court agrees that the ALJ should have explicitly explained the weight given to each of the opinions, the ALJ's cited medical evidence in the record, along with the credibility findings as to Plaintiff's subjective complaints, demonstrated the substantial evidence necessary for making the determination that Plaintiff was not disabled. Furthermore, Plaintiff's mental limitations were addressed by the ALJ's reference to the medical reports evidencing that those limitations were apparently under control. Therefore, the Court finds that the determination of the ALJ as to Plaintiff's residual functional capacity was based

upon substantial evidence in the record.

Next, Plaintiff argues that the ALJ erred as a matter of law in evaluating Plaintiff's credibility. Pl.'s Br. at 15-17. Plaintiff correctly notes that objective evidence in addition to a consideration of Plaintiff's daily activities; the location, duration, frequency, and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications; treatment other than medication for symptoms; and functional limitations due to symptoms, all weigh into the evaluation of Plaintiff's pain and determining the extent to which it limits Plaintiff's capacity for work. See 20 C.F.R.§ 404.1529. Thus, Plaintiff's subjective complaints of pain are not dispositive of the matter, nor should those complaints be disregarded solely because they are not substantiated by objective medical evidence.

The substance of the ALJ's decision, if not the form, followed in accordance with the regulations, despite Plaintiff's claims to the contrary. The ALJ considered the objective medical evidence in the record, which also contained information regarding the factors set forth in the regulations. For example, Plaintiff was prescribed Elavil for her migraine headaches on March 21, 2002. R. at 192. Thereafter, on August 27, 2002, Plaintiff's examination revealed that her headaches seemed to be resolving. R. at 331. Furthermore, Plaintiff's claim of carpal tunnel syndrome is disputed in the objective evidence where Dr. Buglisi noted that Plaintiff did not know she had carpal tunnel syndrome until the lawyer told her. R. at 330. All of these findings, among others, are reflected in the ALJ's decision. Therefore, the Court finds that the ALJ did not err as a matter of law in this evaluation.

Finally, Plaintiff alleges that the ALJ erred in failing to consider the impact of Plaintiff's obesity on her ability to work. Pl.'s Br. at 17-19. Plaintiff asserts that obesity itself can meet a

listed impairment when it markedly impacts the individual's ability to walk and stand. Yet, the reports noted by Plaintiff, beyond stating her obesity, do not evidence such an impact on her ability to walk and stand. See Pl.'s Br. at 18. Furthermore, the ALJ referenced the reports of Dr. Buglisi and Dr. Golish that failed to evidence an impact on her ability to walk and stand that would prevent her from doing the work as found by the ALJ. See R. at 325-31, 340-47. Therefore, the Court does not agree that the ALJ failed to consider all pertinent evidence.

Accordingly, the Court finds that the ALJ's decision was based upon substantial evidence in the record and Plaintiff's appeal is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 10, 2006

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.